# Richmond

## James Dobbins v. Commonwealth of Virginia.

January 21, 1957.

Record No. 4252.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

*Per Curiam.*

*Oliver W. Hill* and *Spottswood W. Robinson, III* (*Martin A. Martin*, on brief), for the plaintiff in error.

*Frederick T. Gray, Assistant Attorney General* (*J. Lindsay Almond, Jr., Attorney General*, on brief), for the Commonwealth.

James Dobbins, father of Rosetta Dobbins, a child under sixteen years of age, was charged with violating the compulsory school attendance law (§ 22-251, Code 1950, as amended by Acts 1952, ch. 376[1]) which follows:

"Every parent, guardian, or other person in the Commonwealth,

---

[1] Acts 1956, Extra Session, ch. 59, p. 61, is not involved in this litigation. § 22-253.2, 1956 Add. Supp., Code 1950.

having control or charge of any child or children, who have reached the seventh birthday and have not passed the sixteenth birthday, shall send such child, or children, to a public school, or to a private, denominational or parochial school, or have such child or children taught by a tutor or teacher of qualification prescribed by the State Board and approved by the division superintendent in a home, and such child, or children, shall regularly attend such school during the period of each year the public schools are in session and for the same number of days and hours per day as in the public schools. The provisions of this section shall apply to any child or children who may be admitted to the primary grades in the public free schools of Virginia under the discretionary provision of § 22-218."

Failure to comply with this statute is made a misdemeanor. Section 22-256, Code 1950.

Accused pleaded not guilty and upon waiver of trial by jury, all matters of law and fact were submitted to the court. Dobbins was found guilty of the misdemeanor, and from that conviction he appealed.

The pertinent facts may be briefly stated.

Under § 22-43, Code 1950, the town of West Point constitutes a separate school district, but one of its school board members is, under the statute, a member of the school board of King William county. For years prior to 1952 the West Point school board maintained two segregated high schools, *i.e.*, the Beverly Allen school and West Point high school for the education of negro and white students respectively. In 1951 King William county established the Hamilton Holmes school for negroes, situate about eighteen miles from the corporate limits of West Point. In July 1952 the West Point school board closed Beverley Allen school and made arrangements to transport the negro high school students of West Point to Hamilton Holmes school. When West Point high school was opened in September, 1952, Dobbins and several other negroes presented their children at that school for admission. The board declined to enroll them because they were of the negro race but offered to transport them by bus to and from West Point to Hamilton Holmes school where arrangements had been made for their admission. That offer was declined by Dobbins and the other parents, and upon their continued refusal to send their children to school, this prosecution was instituted.

A detailed statement of the advantages offered at Hamilton Holmes and West Point high schools respectively is unnecessary. It is suf-

ficient to say that it conclusively appears from evidence tendered by accused that the physical facilities and educational opportunities and advantages afforded students attending West Point high school are far superior to those offered at Hamilton Holmes. This evidence was, however, rejected by the court as irrelevant to the issue, but it was made a part of the record and is now before us. It is not now contended that it could be successfully refuted.

Accused did not refuse to send his child to school but sought to have her attend. The school board's refusal to admit her solely because of her race to the school attended by children of the white race similarly situated and the resultant requirement that Dobbins send her to a school of materially poorer facilities and educational advantages on penalty of prosecution was an unconstitutional application of § 22-251 and a denial to him of the equal protection of the law guaranteed by the Fourteenth Amendment of the Constitution of the United States.[2]

It has long been settled law that the refusal of a state agency to afford members of one race, solely because of their race, educational facilities and advantages substantially equal to those afforded persons of any other race is a denial of the equal protection of the law and violative of the Fourteenth Amendment.

Section 22-251 has heretofore been declared to be constitutional. *Rice, et al.* v. *Commonwealth*, 188 Va. 224, 49 S. E. 2d 342. We reaffirm that holding. Here, however, the section has been unconstitutionally applied. Application of a criminal statute so that it brings about or results in inequality of treatment to the two races is not justified.

The rejected evidence was relevant to the issue of whether or not accused had violated the statute. Section 22-251 cannot be applied as a coercive means to require a citizen to forego or relinquish his constitutional rights.

Under the facts accused did not violate the compulsory attendance statute. The judgment appealed from will be reversed and the prosecution dismissed.

*Reversed and final judgment.*

---

[2] "Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."