55 Wn.2d 177 (1959)
346 P.2d 999
THE STATE OF WASHINGTON, on the Relation of Shoreline School District No. 412, Plaintiff and Relator,
v.
THE SUPERIOR COURT FOR KING COUNTY, Raymond Royal, Judge, Respondent.[1]
No. 34772.
The Supreme Court of Washington, En Banc.
December 3, 1959.
Charles O. Carroll and Anthony Savage, Jr., for relator.
Murray B. Guterson, for respondent.
OTT, J.
William and Maude Wold are husband and wife, and have been residents of the state of Washington since August, 1952. Alta Lee Wold, their daughter, was born June 6, 1945. Prior to March 14, 1955, she was regularly enrolled as a grade school student at the Ronald public school in Shoreline school district No. 412 in King county. On that date, her parents withdrew her from the fourth grade. After several demands were made upon the parents by the truant officer of the school district that Alta Lee attend a public or private school, as required by Laws of 1909, chapter 97, subchapter 16, p. 364 et seq., a petition was filed in the juvenile court for King county which alleged that Alta Lee Wold was a delinquent child, because of her violation of the compulsory school attendance law of this state, and that William and Maude Wold, her parents, were contributing to her delinquency.
At the hearing upon the petition, the parents admitted that Alta Lee had not been attending public school, and that she had not been excused from attendance by any school authority. Their defense was that Alta Lee's mother had graduated from a Colorado high school in 1937; that Alta Lee was being taught the regular public grade school subjects by her mother in their home, and that this constituted a private school. A further defense was that they were members of the Seventh Elect Church In Spiritual Israel; that eating meat, fish or fowl, listening to music, and dancing *179 were forbidden by the tenets of their church, and that, to be present where meat, fish or fowl was served or music played violated their religious belief.
After considering the evidence, the juvenile court found that the "school" Alta Lee was attending did not constitute a private school as contemplated by law; that, although their church tenets were violated by public school attendance, this was not a defense to violation of the compulsory school attendance law; that Alta Lee was a dependent and delinquent child, and that the parents, William and Maude Wold, were contributing to her dependency and delinquency.
August 8, 1955, the court adjudicated Alta Lee to be a dependent child and a ward of the juvenile court, but permitted her to remain in the physical custody of her parents, conditioned upon her parents' providing, prior to September 1, 1955, a method for her education in conformity with state law.
September 14, 1955, the parents failed to appear and answer a petition relative to their compliance with the August 8, 1955, judgment, and, September 19, 1955, the court entered an order continuing the cause "Subject to Call."
The Wolds continued to disregard the judgment of the court and, on May 13, 1957, Shoreline school district No. 412 again petitioned the court for a review of the August 8, 1955, dependency order and for compliance, on the part of the parents and Alta Lee Wold, with the compulsory school attendance law.
The cause was heard before another trial judge, as the former judge voluntarily disqualified himself. Further evidence was introduced. At the close of the trial, the court found that "All of the facts and circumstances which compelled the court to assume jurisdiction over Alta Lee Wold on August 8, 1955, still exist," and that Alta Lee was still a dependent child and a ward of the court.
The court further found that the mother's teaching methods had improved in the two and one-half years she had been maintaining the home school; that the legislature had *180 not provided standards for private schools, and that, since Alta Lee was receiving a book learning comparable to that of the public schools, she was attending a private school as contemplated by law.
Following the entry of judgment, the district was granted a review in this court by certiorari.
The principal assignment of error relates to the court's finding that the Wolds' home school constituted a qualified private school as contemplated by law.
We agree with relator's contention that the court's findings are inconsistent. It found that Alta Lee Wold was not attending a public or private school, as provided by law, and was therefore a dependent child. After so finding, it then found that the home school which she was attending, and which caused her to be adjudicated a dependent child, was a qualified private school. In other words, the juvenile court obtained jurisdiction of Alta Lee Wold and made her a ward of the court because the court found that she was not attending a qualified private school, as contemplated by law. After obtaining jurisdiction of Alta Lee on this basis, the court then found that the welfare of its ward would best be served by her attending the same unqualified school because its method of education was "in conformity with the laws of this state."
The juvenile court's decision is inconsistent with State v. Counort, 69 Wash. 361, 124 Pac. 910 (1912) (to which decision we adhere), wherein this court held that a father teaching his children at home was doing so in violation of the compulsory school attendance law. In the cited case, this court said [p. 363]:
"... We do not think that the giving of instruction by a parent to a child, conceding the competency of the parent to fully instruct the child in all that is taught in the public schools, is within the meaning of the law `to attend a private school.' Such a requirement means more than home instruction; it means the same character of school as the public school, a regular, organized and existing institution making a business of instructing children of school age in the required studies and for the full time required by the laws of this state. The only difference between the *181 two schools is the nature of the institution. One is a public institution, organized and maintained as one of the institutions of the state. The other is a private institution, organized and maintained by private individuals or corporations. There may be a difference in institution and government, but the purpose and end of both public and private schools must be the same  the education of children of school age. The parent who teaches his children at home, whatever be his reason for desiring to do so, does not maintain such a school. Undoubtedly a private school may be maintained in a private home in which the children of the instructor may be pupils. This provision of the law is not to be determined by the place where the school is maintained, nor the individuality or number of the pupils who attend it. It is to be determined by the purpose, intent and character of the endeavor...."
Article IX, § 1, of our state constitution, provides that "It is the paramount duty of the state to make ample provision for the education of all children residing within its borders, ..." The legislature, in compliance with this constitutional mandate, provided for compulsory school attendance for all children between the ages of eight and sixteen years (unless excused from attendance for reasons not here material) at either a public or private school. Laws of 1909, chapter 97, subchapter 16, p. 364 et seq.
In order that school attendance be assured at either a public or private school, the legislature required that a census of all school children in each district be furnished to school authorities. All teachers are required to report all cases of truancy. Laws of 1909, chapter 97, subchapter 16, § 6, p. 367. The legislature authorized the attendance officer of the district to investigate school attendance of all children between the ages of eight and fifteen years, and to institute proceedings against violators of the compulsory school attendance law. Laws of 1909, chapter 97, subchapter 16, § 4, p. 366.
[1] From the cited sections of the law, it is apparent that the legislature, in conformity with the constitutional mandate, required compulsory school attendance of all children between the ages of eight and sixteen years (with certain exceptions not here material) in either a public or qualified *182 private school, and vested authority in designated officers to enforce this law.
[2-5] Although the trial court found that there are no legislative standards governing private schools in this state, such a conclusion is not supported by law. A school is an institution consisting of a teacher and pupils, irrespective of age, gathered together for instruction in any branch of learning. Weisse v. Board of Education of City of New York, 178 Misc. 118, 32 N.Y.S. (2d) 258 (1941); Board of Education of City School District of City of Cleveland v. Ferguson, 68 Ohio App. 514, 39 N.E. (2d) 196 (1941). The three essential elements of a school are (1) the teacher, (2) the pupil or pupils, and (3) the place or institution. If the alleged school has no teacher, then it does not qualify as a school. There is one standard which the legislature made applicable to all schools, both public and private, and that standard is that the teacher must be qualified to teach and hold a teaching certificate. Laws of 1909, chapter 97, subchapter 4, Art. VII, § 1, p. 306, provides:
"No person shall be accounted as a qualified teacher within the meaning of the school law, who is not the holder of a valid teacher's certificate or diploma issued by lawful authority of this state."
[6] The Wolds had the place and the pupil, but not a teacher qualified to teach in the state of Washington. Their alleged private school did not legally qualify as such.
The legislature granted to the county or district superintendent of schools the power to excuse one who was not attending public school from the penalties of the compulsory school attendance act, provided such child was attending an "approved private school." Laws of 1909, chapter 97, subchapter 16, § 1, p. 364, provides:
"All parents, guardians and other persons in this state having or who may hereafter have immediate custody of any child between eight and fifteen years of age (being between the eighth and fifteenth birthdays), or of any child between fifteen and sixteen years of age (being between the fifteenth and sixteenth birthdays) not regularly and lawfully engaged in some useful and remunerative occupation, shall cause such child to attend the public school of *183 the district, in which the child resides, for the full time when such school may be in session or to attend a private school for the same time, unless the superintendent of the schools of the district in which the child resides, if there be such a superintendent, and in all other cases the county superintendents of common schools, shall have excused such child from such attendance because the child is physically or mentally unable to attend school or has already attained a reasonable proficiency in the branches required by law to be taught in the first eight grades of the public schools of this state as provided by the course of study of such school, or for some other sufficient reason. Proof of absence from public schools or approved private school shall be prima facie evidence of a violation of this section." (Italics ours.)
The legislature further required persons who were allegedly maintaining a private school to report annually to the county superintendent of schools. Laws of 1933, chapter 28, § 14, p. 172, provides:
"It shall be the duty of the administrative or executive authority of every private school in this state to report to the county superintendent of schools on or before the 30th day of June in each year, on a blank to be furnished, such information as may be required by the superintendent of public instruction, to make complete the records of education work pertaining to all children residing within the state."
Private schools must also report annually to the state superintendent of public instruction. Laws of 1909, chapter 97, subchapter 2, § 3, pp. 231, 233, provides:
"The powers and duties of the Superintendent of Public Instruction shall be: ...
"Tenth. To require annually, on or before the 15th day of August, of the president, manager, or principal of every educational institution in this state, a report of such facts arranged in such form as he may prescribe, and he shall furnish blanks for such reports; and it is hereby made the duty of every president, manager or principal, to fill up and return such blanks within such time as the Superintendent of Public Instruction shall direct."
[7] Although the legislature did not expressly provide that all of the legislative standards for a public common school must be maintained by a private school in order to *184 qualify as such, it is reasonable to assume that the legislature intended that the one to whom it had delegated the power and authority to determine whether a child was attending a qualified private school would be guided in that decision by the minimum standards required by the legislature for a public common school. For example, Laws of 1909, chapter 97, title I, subchapter 1, § 2, p. 230; Laws of 1909, chapter 97, title III, subchapter 1, § 2, p. 262; Laws of 1909, chapter 97, title III, subchapter 4, § 3, p. 286, as amended by Laws of 1915, chapter 71, § 1, p. 246, Laws of 1919, chapter 90, § 4, p. 210, and Laws of 1955, chapter 8, § 1, p. 10; Laws of 1919, chapter 89, § 1, p. 205; Laws of 1921, chapter 56, p. 171, as amended by Laws of 1939, chapter 21, p. 51, and Laws of 1955, chapter 20, § 3, p. 159; Laws of 1923, chapter 76, p. 236; Laws of 1925, Ex. Ses., chapter 134, p. 337; Laws of 1941, chapter 203, § 1, p. 597.
Laws of 1933, chapter 28, § 14, p. 172, supra, requires reports by private schools to the county superintendent which are to contain such information as is required "to make complete the records of education work pertaining to all children residing within the state." (Italics ours.) The information contained on these forms, relative to the standards of the school, gives the superintendent the information needed to exercise his discretion as to whether or not the alleged school in fact qualifies as such, and, hence, whether children attending it may be excused from attendance at public school. Under the compulsory school attendance law, the legislature delegated to the district or county superintendent the authority to determine the minimum standards for a private school, in order that, in the exercise of his discretion, attendance at a qualified private school may be approved.
In the instant case, the Wolds' alleged private school did not have a qualified teacher. The Wolds did not report that their daughter was attending a private school, nor did they attempt in any manner to qualify their alleged school as a private school with the person whose duty it was to exercise his discretion in granting the waiver to students of public school attendance.
*185 [8] We find no merit in the contention of the Wolds that they are excused from the penalties of the compulsory school attendance law because school attendance is repugnant to their religion. Commonwealth v. Renfrew, 332 Mass. 492, 126 N.E. (2d) 109 (1955); Commonwealth v. Smoker, 177 Pa. Super. Ct. 435, 110 A. (2d) 740 (1955); Commonwealth v. Beiler, 168 Pa. Super. Ct. 462, 79 A. (2d) 134 (1951); People v. Donner, 302 N.Y. 857, 100 N.E. (2d) 48 (1951); Shapiro v. Dorin, 199 Misc. 643, 99 N.Y.S. (2d) 830 (1950); Rice v. Commonwealth, 188 Va. 224, 49 S.E. (2d) 342, 3 A.L.R. (2d) 1392 (1948).
[9] Although the freedom to believe remains absolute, religious beliefs, whatever they may be, are not a legal justification for violation of positive law. See State ex rel. Holcomb v. Armstrong, 39 Wn. (2d) 860, 239 P. (2d) 545 (1952).
The judgment of the trial court is affirmed in the following particulars: Alta Lee Wold is a dependent child because she is in violation of the compulsory school attendance act, and will remain a ward of the court until such time as she is purged of dependency by attendance at either a public or qualified private school.
The judgment is reversed as to that portion thereof which adjudicates the Wold home school to be a method of education that conforms with state law. The cause is remanded with instructions to enter judgment in accordance with the views herein expressed. Neither party will recover costs.
WEAVER, C.J., MALLERY, DONWORTH, and FOSTER, JJ., concur.
HUNTER, J. (dissenting)
This is not an action between the school district and the parents, as indicated in the majority opinion. In August, 1955, Alta Lee Wold was adjudicated to be a ward of the juvenile court, consequently the parents no longer have control over this minor child; therefore this review is strictly a controversy between the school district and the juvenile court.
The trial court found that the minor child was receiving education in the home equivalent to the standards maintained in the public schools; that the welfare of the child *186 would best be served by continuing her education in the home, in the manner which the parents are now providing. The findings and judgment provided in part:
"Presently, a full school curriculum has been established in the Wold residence. The curriculum (save only for those subjects which are inconsistent with the Wolds' religious beliefs) is patterned after that followed for the particular grade level in their school district. Regular class periods on various subjects are held at regularly scheduled hours each day, five days a week, for a full school year, the same as maintained in the school district in which the children reside. Full and complete attendance records are kept. The books and materials used compare favorably with those employed in the public school district. The teaching method used by Mrs. Wold compares favorably with those employed by fully accredited teachers in the school district. In many respects the results obtained by this method of education, insofar as Alta Lee Wold is concerned, is equal to that of a superior child of her grade level in the public schools of her school district. The method of education in the Wold residence is equal, if not superior, to the standards maintained in many of the public school districts of the State of Washington.
"...
"The Wold home, save for the educational factor, is completely normal in every respect, The Wold children live a completely normal life and are well cared for and given every advantage possible by their parents. The entire family sincerely believes in the teachings of their church and does its utmost to live up to their religious beliefs."
The court concluded in part:
"In accordance with the above, it is the conclusion of this court that at the present time at the present grade level Alta Lee Wold is being furnished with a method of education in conformity with the laws of this state and that the welfare of said child will best be served by not revoking the order of August 8, 1955." (Italics mine.)
Judgment was entered as follows:
"... that Alta Lee Wold is now and will remain a ward of the court in temporary custody of her parents, Maude Wold and William Wold, subject to the probationary supervision of an officer of the juvenile court and subject to the further order of the court upon the condition that said *187 parents shall continue to provide the said child a method for the education of said child which conforms to the laws of the State of Washington." (Italics mine.)
The school district has appealed contending the juvenile court erroneously determined that the instruction of the Wold child in the home is equivalent to a private school.
This contention is a confusion of the issue resulting from the finding of the juvenile court which was, in effect, that the education of the minor in the home was equivalent to the education she would receive in a private school. This finding was not necessary for the determination of the real issue before the court, that issue being what was best for the welfare of this particular child. The juvenile court did find it was for the welfare of this particular child that she continue to receive her education in the home, and that she remain under the continued probationary supervision of the juvenile court.
The school district takes the position that the education furnished the Wold child in the home is not equivalent to a private school; that the compulsory school attendance law, RCW 28.27.010, has been violated and the juvenile court has exceeded its jurisdiction in failing to comply with this statute. This completely misses the ultimate issue as to what is best for the welfare of the child under all of the circumstances of this case. This minor, having been determined a dependent and delinquent child, is clearly within the jurisdiction of the juvenile court which may enter any order for the promotion of the welfare of such a child.
RCW 13.04.090 of the juvenile act provides:
"... After acquiring jurisdiction over any child, the court shall have power to make an order with respect to the custody, care or control of such child, or any order, which in the judgment of the court, would promote the child's health and welfare. ..." (Italics mine.)
On many occasions this court has interpreted this act to give the juvenile court the broadest of discretion in planning for the welfare of minors within its jurisdiction. If the relator prevails, the juvenile courts of this state will hereafter be imposed with a new limitation upon the exercise of their *188 discretion in planning for a child's welfare by the requirement of compliance in every instance with the compulsory school attendance law. Such a limitation would be highly detrimental to the efficient functioning of the juvenile court and is, in my opinion, beyond the contemplation of the juvenile court act.
The fallacy of relator's position can be illustrated by considering some of the routine problems which confront a juvenile court: The delinquent or dependent child within the compulsory school attendance age who, by his prolonged absence from school, is too far behind his age group to permit a school adjustment; or such child who is mentally incapable of adjusting in a public school; or such child who is a criminal offender; or such child who is incorrigible and refuses to submit to school discipline; or, as in this case, such child who, because of certain religious principles, refuses to obey instructions and is a misfit in any school.
The compulsory school attendance law does not contemplate that every child of compulsory school attendance age must come under the operation of the statute. The legislature wisely made provision that exceptions be provided where its operation would be impractical. RCW 28.27.010 provides in part:
"The superintendent of the schools of the district in which the child resides, or the county superintendent if there is no district superintendent, may excuse a child from such attendance if the child is physically or mentally unable to attend school, or has already attained a reasonable proficiency in the branches required by law to be taught in the first eight grades of the public schools or for any other sufficient reason. ..." (Italics mine.)
It would be unreasonable to conclude that the legislature granted to the school authorities the power to excuse the operation of the statute, but withheld the same power from the juvenile court when it has authorized the juvenile court to make any order to promote the welfare of minors within its jurisdiction. Moreover, by permitting the relator to prevail, the juvenile court will hereafter be required to obtain permission from the proper school authorities to remove its *189 wards from the operation of the compulsory school attendance statute. Such a result presumes that the legislature intended to give the school authorities the power to control a function of the superior court. It is inconceivable that this was the legislative intent.
The above discussion further illustrates that assuming arguendo the juvenile court in the instant case made an incorrect determination of what is and what is not a private school, the compulsory school attendance statute is nevertheless inoperative as to this minor by reason of the juvenile court having determined it is for the best welfare of this particular child to continue receiving her education from her parents in the home. In my opinion, the juvenile court clearly had the jurisdiction under RCW 13.04.090 to make this determination and did not abuse its discretion in so doing.
In the instant case, any fear that the relator school district may have that the finding of the juvenile court defines a private school should be allayed, since the finding relates only to this particular child in the court's consideration of her welfare. This is not a case in which the requirements for a private school are being tested, but is clearly a case to determine whether or not a juvenile court judge may plan for the welfare of his wards without being limited by the compulsory school attendance law of this state.
The judgment of the trial court should be affirmed.
ROSELLINI, J., concurs with HUNTER, J.
HILL and FINLEY, JJ. (concurring)
We concur in the conclusion of the dissent that the judgment of the trial court should be affirmed.
January 25, 1960. Petition for rehearing denied.
NOTES
[1] Reported in 346 P. (2d) 999.