### Richmond

ROBERT GRIGG, ET AL.

V.

COMMONWEALTH OF VIRGINIA

December 3, 1982.

Record No. 810519.

Present: All the Justices.

*Gregory A. Giordano (Thomas B. Shuttleworth; Clark & Stant, P.C., on brief), for appellants.*

*Robert E. Kowalsky, Jr., Commonwealth's Attorney, for appellee.*

*Amicus Curiae: James W. O'Toole (James W. O'Toole, on brief), for appellants.*

*Amicus Curiae: Youth Advocacy Clinic, T. C. Williams School of Law, University of Richmond. (Robert E. Shepherd, Jr., on brief), for appellee.*

*Amicus Curiae: State Board of Education. (Gerald L. Baliles, Attorney General; Maston T. Jacks, Deputy Attorney General;*

*Paul J. Forch, Assistant Attorney General; Joan W. Murphy, Assistant Attorney General,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

At the time this case arose, Code § 22-275.1 (now § 22.1-254), part of the compulsory school attendance law, provided in part that parents shall send their school-age children to "a public school, or to a private, denominational or parochial school, or have such . . . children taught [in a home] by a tutor or teacher of qualifications prescribed by the State Board of Education and approved by the division superintendent . . . ." The principal question in this case is whether parents, not approved as tutors or teachers pursuant to the Code section, may qualify for the private school exemption by teaching their children at home.

The case originated in juvenile and domestic relations district court when the chief attendance officer for the City of Chesapeake school system filed separate petitions against Robert Grigg and Vickie Grigg, husband and wife, and their daughters, Stephanie and Nicole. The petitions against the parents alleged that the attendance officer had investigated and found "no valid reason" for the non-enrollment of the children in the public schools; the petitions prayed for entry of an order compelling the parents to enroll the children in the public schools or to make "other proper arrangements" for their education. As amended, the petitions against Stephanie and Nicole alleged that they were children in need of services; these petitions requested that the court deal with the children in a manner to serve the purpose and intent of the "Juvenile and Domestic Relations District Court Law."

Following adverse decisions by the juvenile court on the four petitions, the Griggs appealed. The circuit court ordered the petitions against Mr. and Mrs. Grigg merged with those against the children. After a hearing, the court found that Stephanie and Nicole were children in need of services. The court placed the children on unsupervised probation for a period of twelve months on condition that they "regularly attend a private, public, denominational or parochial school, or . . . be taught at home by a tutor or teacher of qualifications prescribed by the State Board of Education and approved by the Superintendent of Schools." The court also ordered the parents to send the children to one of the desig-

nated types of schools or to arrange for their instruction at home by an approved tutor or teacher.

It was stipulated below that Stephanie and Nicole, aged fourteen and eleven years, respectively, formerly attended public school in Chesapeake. They were withdrawn by their parents on January 2, 1980, in order that they might be "taught at home" by their mother.

The superintendent of schools gave the parents notice pursuant to Code § 22-275.10 (now § 22.1-261), requiring the children's attendance at school within three days, but neither child was re-enrolled. The parents sent a letter to the superintendent in March stating that the children were being instructed in a private school named "Ark II," which the parents had established in their home.

The parties stipulated also that Mrs. Grigg was the children's instructor and that she had not sought or received approval by state or local school authorities as a qualified tutor or teacher. The stipulation stated further that teachers in private, denominational, or parochial schools in Virginia are not required to meet the qualifications prescribed by the State Board of Education for tutors or teachers.

Mr. and Mrs. Grigg both testified below. Mr. Grigg said that he taught the children part of the time, but that Mrs. Grigg was the principal instructor. He is a high school graduate with the equivalent of an Associate's Degree in Industrial Technology; she obtained her high school diploma from a correspondence school. He stated the children were withdrawn from public school because he did not believe they were receiving an adequate education, because he did not approve of the language and violence present in the schools, and because he deplored the lack of morality in the public school setting. Mrs. Grigg echoed her husband's testimony in these respects.

In their instruction of the children, the parents employed the "Calvert School" program, using teaching manuals included in the materials furnished with the "Calvert Home Courses." The children received instruction daily from 8:00 a.m. to 4:00 or 5:00 p.m. during the school week; they were taught "everything that they had on a daily basis in the public schools [and] some extra things." Although she admitted that it was "difficult," Mrs. Grigg stated she was able to cope "[j]ust fine" in caring for her two younger children, aged three and two years, while she taught Stephanie and Nicole.

## I.

The Griggs do not challenge the authority of the Commonwealth to require parents to send their children to public school unless they make proper provision otherwise for the children's education. Such a challenge would be fruitless, for this authority is recognized universally. *Rice v. Commonwealth,* 188 Va. 224, 236-37, 49 S.E.2d 342, 348 (1948).

Neither do the Griggs contend that the children's nonenrollment in public school was excused by the portion of Code § 22-275.1 that permits home instruction by an approved tutor or teacher. Rather, the Griggs contend that they established their own private school, which the children attended just as they would any other school, and hence the family's action was in full compliance with the statute.

The Griggs argue that the school attendance law is penal in nature and must be strictly construed, with every reasonable doubt regarding its interpretation resolved in their favor. They maintain that the term "private school" is undefined in the statute and that, unlike public schools, private schools are unregulated by the Commonwealth, even to the point that teachers in such schools need not be certified; hence, the term "private school" must be accorded a broad interpretation.

In support of their position, the Griggs cite *People v. Levisen,* 404 Ill. 574, 90 N.E.2d 213 (1950), which, they say, is "strikingly similar" to the present case. There, a statute required school-age children to attend public school in the district where they resided, but it exempted from the requirement those attending "a private or parochial school where children are taught the branches of education taught to children of corresponding age and grade in the public schools." 404 Ill. at 576, 90 N.E.2d at 214-15. The child involved had been withdrawn from public school and taught at home by the mother. The state contended the child's home tutoring did not constitute attendance at a private school. The court disagreed, adopting the parents' argument that "by receiving instruction in her home in the manner shown by the evidence the child was attending a private school." 404 Ill. at 577, 90 N.E.2d at 215.

Unlike our school attendance law, however, the Illinois statute did not provide for home instruction as a separate category of exemption in addition to attendance at a private school. We believe this distinction is not only substantial but also crucial. A similar

distinction was noted in *People* v. *Turner,* 121 Cal. App. 2d Supp. 861, 263 P.2d 685 (1953), *appeal dismissed,* 347 U.S. 972 (1954).

In *Turner,* the court had under consideration California's Compulsory Education Law, which is akin to our compulsory school attendance statute. The California law required children to attend public school but exempted, among others, those "being instructed in a private full-time day school by persons capable of teaching" and those "being instructed in study and recitation . . . by a private tutor or other person [holding] a valid State credential for the grade taught." 121 Cal. App. 2d Supp. at 864, 263 P.2d at 686. The parents contended that, in instructing their children at home, they were operating a private school within the meaning of the applicable statute. The court rejected this contention, stating:

[T]he legislature intended to distinguish between private schools, upon the one hand, and home instruction by a private tutor or other person, on the other. If a "private school" as that term is used in [the Compulsory Education Law] necessarily comprehends a parent or private tutor instructing at home, there was no necessity to make specific provision exempting the latter.

121 Cal. App. 2d Supp. at 868, 263 P.2d at 688. Referring to the Illinois decision in *Levisen,* the California court stated:

The statute there, however, unlike our own, while exempting private and parochial schools, did not grant such exemption to instruction at home or by private tutor. Thus it did not upon its face indicate a legislative intent to distinguish between the two.

121 Cal. App. 2d Supp. at 868, 263 P.2d at 688-89.[1]

---

[1] The Griggs also cite *State* v. *Peterman,* 32 Ind. App. 665, 70 N.E. 550 (1904), and *Wright* v. *State,* 21 Okla. Crim. 430, 209 P. 179 (1922). Like the Illinois statute construed in *Levisen,* however, the Indiana law interpreted in *Peterman* did not contain a separate exemption for home instruction. And the Oklahoma statute involved in *Wright* required attendance at "public or private school, or other school, unless other means of education are provided . . . ." The parents did not claim their home instruction constituted attendance at a private school; rather, they maintained they had provided "other means of education."

The Griggs attempt to distinguish *Turner* on the ground that California's statute defines and regulates private schools, while Virginia's does not. A similar non-regulation argument was advanced in *State* v. *M. M.,* 407 So. 2d 987 (Fla. Dist. Ct. App. 1981). Rejecting the argument, the court stated:

> That there is no statutory authority regulating the establishment of private schools in Florida does not mean that Florida parents, unqualified to be private tutors, can proclaim their homes to be private schools and withdraw their offspring from public schools. We reach this conclusion because of the . . . rule of statutory construction [that requires the court to give effect to every clause and every part of a statute].
>
> * * * *
>
> If we were to hold that the parents of the minors in the present case could, pursuant to [the part of the Florida statute sanctioning attendance at private schools], establish a private school in their own home for the purpose of educating the minors, we would violate the foregoing rule of statutory construction by failing to give effect to [the portion of the statute requiring approval of private tutors engaged in home instruction].

407 So. 2d at 990. Adopting the California rationale in *Turner,* the Florida court ruled that home instruction by the mother, who had not been approved as a private tutor, did not constitute attendance at a private school.

We agree with the California court that the creation of separate and distinct categories of exemption for private schools on the one hand and home instruction on the other is determinative of the question whether mere home instruction may constitute attendance at a private school. We agree also with the Florida court that this determinative effect is unaltered by the lack of statutory regulation of private schools. And we concur in the observation of the court below that it is unnecessary to define in this case the term "private school"; the Griggs would not qualify for the private school exemption even under a broad definition of the term.

In Code § 22-275.1, the General Assembly clearly created separate and distinct categories of exemption from public school attendance—private schools and home instruction representing two such categories. With respect to these two categories, it was the

obvious legislative intent that one exemption should operate in one set of circumstances and the other in a different set, else there would have been no reason to create both exemptions.

 Equally clear is the legislative intent that home instruction by an unapproved tutor or teacher would not qualify for exemption under any circumstances.[2] When a legislative enactment limits the manner in which something may be done, the enactment also evinces the intent that it shall not be done another way. *Expressio unius est exclusio alterius. Christiansburg* v. *Montgomery County,* 216 Va. 654, 658, 222 S.E.2d 513, 516 (1976). In permitting home instruction only by a qualified tutor or teacher, the General Assembly has declared that such instruction by an unapproved person shall be impermissible.[3]

## II.

 At one point in the trial below, counsel for the Griggs asked the court to decide whether the proceeding was civil or criminal in nature. The court ruled that "this is a civil matter." The parents contend that the ruling was erroneous. They argue that the proceeding against them was criminal in nature and that the Commonwealth therefore had the burden to prove a violation of the compulsory school attendance law beyond a reasonable doubt.[4]

The parents refer to the duty imposed upon them by Code § 22-275.1 to send their children to public school or to provide otherwise for their education in accordance with the statute. The parents then cite § 22-275.7 (now § 22.1-263), which makes a violation of the duty a misdemeanor; section 22-275.11 (now § 22.1-262), which provides that a proceeding against a parent for violating the duty shall be initiated by a "complaint in the name of the Commonwealth"; and § 22-275.21 (now § 22.1-268), which states

---

[2] In oral argument, the Commonwealth took the position that, under Code § 22-275.1, parents cannot establish private schools in their homes under any circumstances. We need not and do not decide this point because the parents' actions in this case do not go beyond mere home instruction.

[3] The Griggs suggest in their argument that their use of the "Calvert School" program constituted the operation of a private school within the meaning of Code § 22-275.1. Because, as we stated above, unapproved home instruction does not constitute attendance at private school, we reject this suggestion.

[4] The parents argue also that the court's failure to classify the proceeding as criminal denied them their right to a jury trial. We will not consider this argument, however; the parents did not request a jury trial. Because, as we hold *infra*, the proceeding was not criminal in nature, the absence of such a request by the parents constitutes a waiver of a jury trial. Code § 8.01-336; *Collier* v. *Hiden,* 120 Va. 453, 457, 91 S.E. 630, 631 (1917).

that the Commonwealth's Attorney shall prosecute "all cases arising under [the compulsory school attendance law]." These provisions, the parents maintain, demonstrate that the proceeding against them was criminal and not civil in nature.

We disagree with the parents. They were not proceeded against by criminal process or charged with any criminal offense. They were brought into court on petitions asking only civil relief in the form of an order compelling them to enroll their children in public school or make "other proper arrangements" for their education.

At the very beginning of the trial, the court ordered the petitions against the parents merged with those against the children. Thereafter, the matter proceeded as one strictly limited to a status determination, *viz,* whether Stephanie and Nicole were children in need of services. The merged proceeding was not one in which the parents stood in jeopardy of conviction of any criminal offense nor were they actually convicted of any crime. Instead, they were ordered to provide their children with the educational opportunities prescribed by Code § 22-275.1, a purely civil disposition.[5] We agree with the trial court, therefore, that the proceeding below was civil in nature. *Lewis* v. *Commonwealth,* 214 Va. 150, 153-54, 198 S.E.2d 629, 632 (1973).

Furthermore, the Commonwealth's Attorney conceded during argument below that the state's "burden of proof would be beyond a reasonable doubt." Apparently accepting this concession as establishing the burden of proof for this particular case, the trial court found "beyond a reasonable doubt" that Stephanie and Nicole were children in need of services.

Because we find that the proceeding was civil in nature, we believe a civil, rather than the criminal, standard should have been

---

[5] The parents argue that the school attendance law "does not afford any civil remedy against parents who violate the statute" and that the trial court's order against them amounts to an impermissible injunction "to restrain an act that is criminal." Code § 22-275.11 provides, however, that "[i]n addition [to]" making a complaint concerning parental failure to comply with the school law, the superintendent of schools or chief attendance officer may proceed against a truant child under what is now Title 16.1 of the Code. Section 16.1-279(C)(2a) provides that, if a child is found in need of services, the court may "[o]rder the parent . . . to participate in such programs, cooperate in such treatment or be subject to such conditions and limitations as the court may order and as are designed for the rehabilitation of the child and parent . . . ."

Further, the parents argue, the "[i]n addition [to]" language in Code § 22-275.11 means that, before a child may be proceeded against, the parents must first be found "criminally liable" for violating the school law. We reject this argument; we do not read the Code section as requiring a finding against the parents, either civilly or criminally, as a condition precedent to a proceeding against their child or children.

used. Considering, however, that children in need of services may suffer deprivations of liberty, *see, e.g.,* Code §§ 16.1-246(B) and -279(C)(5), we believe the burden applicable to this case should be greater than the standard used in the ordinary civil matter. In our opinion, proof by clear and convincing evidence is the appropriate standard. *See Addington* v. *Texas,* 441 U.S. 418, 432-33 (1979) (approving clear and convincing standard in proceedings for involuntary commitment of the mentally ill); *Interest of Potter,* 237 N.W.2d 461, 461-62 (Iowa 1976) (establishing clear and convincing standard in juvenile proceedings involving conduct potentially injurious to the juvenile or others and not commission of a public offense). Since this standard imposes a lesser burden than the reasonable doubt measure applied in the trial court, the Griggs were afforded greater protection than the nature of their case required.[6]

### III.

The Griggs attack Code § 22-275.1 as void for vagueness. The Griggs assert the axiom that, to be valid, a statute must specify with reasonable certainty and definiteness the conduct which is commanded or prohibited; the enactment passes constitutional muster only if the average person may read it and understand whether he or she will incur a penalty for his or her actions. The statute in question fails this test, the Griggs maintain, for its lack of definition of the term "private school."

We do not believe that, as applied to the Griggs, the statute in question lacks specificity. The Griggs' argument concerning the alleged vagueness of the term "private school" misses its mark and only tends to divert attention from what should be the true focus of this inquiry, *viz,* that portion of Code § 22-275.1 which deals with home instruction. The Griggs were engaged in home instruction, nothing more and nothing less; whether the term "private school" is sufficiently clear is irrelevant to the question whether the statute adequately informs the average person what conduct is permitted or prohibited with respect to home instruction. We think it beyond question that average parents reading § 22-275.1 would know they could not instruct their children at

---

[6] The parents make the additional argument that, while recent revisions of the juvenile law prevent imposition of criminal sanctions upon children for their truancy, parents are still subject to the imposition of such sanctions for abetting truancy. This, the parents maintain, denies them equal protection of the law. The ready answer to this argument is that, since the parents were neither prosecuted nor punished below for a criminal offense, they cannot complain they were denied equal protection of the law.

home as an alternative to public instruction unless they were qualified as tutors or teachers according to the statute's requirements.

## IV.

■ The Griggs' final contention is that the Commonwealth failed in its assumed burden of proving beyond a reasonable doubt that Stephanie and Nicole were children in need of services, as that term is defined in Code § 16.1-228. In pertinent part, this statute reads:

F. *"Child in Need of Services"* means:
1. A child who while subject to compulsory school attendance is habitually and without justification absent from school . . . .

\* \* \* \*

Provided, however, to find that a child falls within [class] 1 . . . above . . . the child or his or her family must be in need of treatment, rehabilitation or services not presently being received and . . . the intervention of the court must be essential to provide the treatment, rehabilitation or services needed by the child or his or her family.

We believe that the Commonwealth carried its assumed burden of proof. It is undisputed in this case that the Grigg children were deliberately withdrawn from public school by their parents, that they were taught at home by persons who were not qualified as tutors or teachers, and that this unlawful practice would have continued indefinitely had the court not intervened and ordered the parents to comply with the school attendance law. The only justification advanced for these actions was the parents' belief that the instruction and training the children received at home were equal to or better than the services provided in public school. This excuse, though obviously sincere, was legally insufficient. Hence, the Commonwealth showed with almost conclusive effect all the elements listed in Code § 16.1-228 as necessary to a finding that the children were in need of services.

For the reasons assigned, the judgment of the trial court will be affirmed.

*Affirmed.*