COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Petty and Huff
Argued by videoconference

**PUBLISHED**

KERRY ANN SPELL

v.      Record No. 0024-20-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE WILLIAM G. PETTY
DECEMBER 15, 2020

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Charles S. Sharp, Judge

Mark A. Murphy (William D. Ashwell; Mark B. Williams &
Associates, PLC, on briefs), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Kerry Ann Spell appeals her conviction for contributing to the delinquency of a minor, in

violation of Code § 18.2-371.  She argues that the evidence was insufficient to support her

conviction, and therefore that the trial court erred in failing to set aside the jury verdict.  We

agree and reverse the judgment of the trial court.

## I.  BACKGROUND

Kerry Ann Spell was charged with driving under the influence, second offense, in

violation of Code §§ 18.2-266 and 18.2-270, and contributing to the delinquency of a minor, in

violation of Code § 18.2-371, both misdemeanors.  She was tried by jury on September 18, 2019,

and found guilty of contributing to the delinquency of a minor.  The jury was unable to reach a

verdict on the charge for driving under the influence.

At trial, the Commonwealth called Spell's minor daughter, K.S., as a witness.  K.S.

testified that on December 21, 2018, Spell was late to pick up K.S. from school.  Pickup that day

was scheduled for 12:30 p.m. K.S. called Spell while she was waiting to be picked up, and Spell said that she had fallen asleep.

K.S. testified that when Spell arrived, they picked up K.S.'s brother from school and went to a Goodwill, a jewelry store, a Five-Below, and a Starbucks. She testified that Spell "looked really sleepy and wasn't really focused . . . like someone who just woke up from a really long nap." She also testified that Spell was driving "a little wavy" and that she "rear-ended, not lightly tapped" another car when driving out of the Starbucks parking lot.

On the way home from Starbucks, K.S. was sitting in the third row of the car. She testified that she was "really scared" and that Spell was driving "practically on the other side of the road." After using her cell phone to contact her stepmother, father, and grandmother, K.S. called 911. K.S. testified that Spell asked her who she was talking to, and K.S. said that she was talking to a friend. While K.S. was on the phone with 911, Spell drove the car home and parked. Spell and the children went inside the house.

Later, a few minutes before 4:00 p.m., Deputy Gale with the Stafford County Sheriff's Office arrived at Spell's house. Deputy Gale asked Spell to come outside. The officer conducted numerous field sobriety tests. Spell passed several of the tests, but she failed the "walk-and-turn," the "one-leg stand," and the "horizontal gaze nystagmus" test. Deputy Gale placed Spell under arrest for driving under the influence. A subsequent chemical analysis of Spell's blood sample was negative for alcohol but did show the presence of the prescription drug Lorazepam. A forensic chemist testified that the level of the drug in Spell's blood was consistent with a minimum therapeutic dose to treat anxiety.

Spell moved to strike on both charges, and the court denied the motion. She presented no evidence and renewed her motion to strike, which the court again denied.

The Commonwealth proceeded on only one theory under Code § 18.2-371, the statute charging contributing to the delinquency of a minor: it elected to prove that K.S. was a child "in need of services." Without objection, the court gave Jury Instruction No. 7, which read that the Commonwealth must prove

> (1) That the defendant willfully contributed to or caused an act or condition which rendered [K.S.] in need of services and
> (2) That the defendant was 18 years old or older at the time; and
> (3) That [K.S.] was under 18 years old at the time.

Without objection, the court also gave Jury Instruction No. 8., which defined a "child in need of services," in relevant part, as

> a child whose behavior, conduct, or condition presents or results in a serious threat to the well-being and physical safety of the child . . . .
> However, to find that a child falls within these provisions, (i) the conduct complained of must present a clear and substantial danger to the child's life or health or to the life or health of another person, (ii) the child or his family is in need of treatment, rehabilitation or services not presently being received, and (iii) the intervention of the court is essential to provide the treatment, rehabilitation or services needed by the child or his family.

This instruction mirrors the definition provided in Code § 16.1-228. The jury returned a verdict of guilty for contributing to the delinquency of a minor.

Spell filed a motion to set aside the verdict on November 22, 2019, arguing that the evidence was insufficient to sustain the conviction for contributing to the delinquency of a minor. On December 6, 2019, the court heard Spell's motion. Spell argued the Commonwealth failed to prove that K.S. was a child in need of services because there was no evidence that K.S.'s "behavior . . . conduct . . . or . . . condition presented or resulted in serious threat to the well-being and physical safety of the child." In addition, she argued the Commonwealth failed to prove that "treatment, rehabilitation or services" were needed and that court intervention was "essential to provide the treatment, rehabilitation or services needed by the child . . . ."

The Commonwealth's attorney argued that K.S. was "in need of services" when she was in the car being driven by Spell, that the 911 call constituted "services," and that "the services ended" when K.S. got to the house and hung up with 911. After hearing argument from both counsel, the court stated, in part,

> The context of the event itself, and the [911] call's contents indicate clearly that this was a child who was frightened, who feared physical injury to the extent that she had to turn on her own mother and call [911]. And if that is not a child who at that point is in need of services, those services thankfully being ultimately not as necessary as they could have been, then I don't know what is.

Accordingly, the court denied the motion. Consistent with the jury's recommendation, the court sentenced Spell to thirty days in jail and ordered her to pay costs.

## II. ANALYSIS

Spell argues that the trial court erred when it denied her motion to set aside the verdict. She argues that the evidence failed to prove that K.S. was a "child in need of services," as defined in Code § 16.1-228.[1]

"When considering whether evidence is sufficient to sustain a criminal conviction, we view the evidence in the light most favorable to the prevailing party at trial and grant to it all reasonable inferences fairly deducible from that evidence." White v. Commonwealth, 68 Va. App. 111, 114 (2017). When a trial court decides a motion to set aside the verdict, the court only looks to whether the jury's verdict is "plainly wrong or without evidence to support it." Wagoner v. Commonwealth, 289 Va. 476, 484 (2015) (quoting Code § 8.01-680). "However, to the extent the appellant's assignment of error requires 'statutory interpretation, it is a question of

---

[1] Spell also contends that the evidence was insufficient to prove that she acted willfully. Because we conclude the evidence was insufficient to show that K.S. was a "child in need of services," we need not address Spell's argument regarding the sufficiency of the evidence to prove willfulness.

- 4 -

law reviewed de novo on appeal.'" Coomer v. Commonwealth, 67 Va. App. 537, 545 (2017) (quoting Grimes v. Commonwealth, 288 Va. 314, 318 (2014)).

Code § 18.2-371 provides that any person eighteen years of age or older "who (i) willfully contributes to, encourages, or causes any act, omission, or condition that renders a child delinquent, in need of services, in need of supervision, or abused or neglected as defined in § 16.1-228 . . . is guilty of a Class 1 misdemeanor." The statute clearly outlines four disjunctive theories regarding the condition of the child: delinquency, in need of services, in need of supervision, or abuse and neglect. Each has a separate and distinct meaning as defined in Code § 16.1-228. The indictment in this case charged Spell in the disjunctive, mirroring the words of the statute. However, Jury Instruction No. 7 stated that the Commonwealth must prove that K.S. was a "child in need of services." That theory became the law of the case. "It is well settled that instructions given without objection become the law of the case and thereby bind the parties in the trial court and this Court on review." Bryant v. Commonwealth, 295 Va. 302, 307 (2018) (quoting Online Res. Corp. v. Lawlor, 285 Va. 40, 60-61 (2013)).

The phrase "child in need of services" is a term of art defined by the Code. A child is "in need of services" when that child's "behavior, conduct, or condition presents or results in a serious threat to the well-being and physical safety of the child . . . [or] of another person." Code § 16.1-228. The definition also requires proof of three additional elements:

> However, to find that a child falls within these provisions, (i) the conduct complained of must present a clear and substantial danger to the child's life or health or to the life and health of another person, (ii) the child or his family is in need of treatment, rehabilitation or services not presently being received, and (iii) the intervention of the court is essential to provide the treatment, rehabilitation or services needed by the child or his family.

Id.

- 5 -

In Grigg v. Commonwealth, 224 Va. 356 (1982),[2] the Supreme Court considered the requirements for a "child in need of services" set forth in Code § 16.1-228.  There, parents had withdrawn their children from public school and were providing in-home instruction not in accordance with the requirements of the Code.  Id. at 359.  The circuit court found the children to be in need of services they were not currently receiving, specifically proper educational instruction.  Id. at 359-60.  The parents were given an opportunity to remedy the situation on their own.  However, the parents were demonstrably unwilling to comport with the recommendations provided by the school system to bring the instruction into compliance with the Code.  Id. at 359.  Because the parents' "unlawful [schooling] practice *would have continued indefinitely had the court not intervened* and ordered the parents to comply with the school attendance law," the Court held that the children were "in need of services."  Id. at 367 (emphasis added).  In other words, without intervention from the circuit court in that case, the children would have remained in an unsafe or disadvantageous state as contemplated by the statute.

Here, accepting for the purposes of analysis that the Commonwealth proved that Spell's conduct "present[ed] a clear and substantial danger to [K.S.'s] life or health," the Commonwealth was required to prove both that K.S. was "in need of treatment, rehabilitation or services not presently being received" and that "intervention of the court [was] essential to

---

[2] In Grigg, the Supreme Court applied the term "child in need of services" but did so from a prior version of Code § 16.1-228, which included as a definition of a "child in need of services," "[a] child who while subject to compulsory school attendance is habitually and without justification absent from school . . . ."  224 Va. at 367.  By way of contrast, Spell was prosecuted under the theory that K.S.'s "behavior, conduct, or condition present[ed] or result[ed] in a serious threat to the well-being and physical safety of the child . . . [or] of another person."  Code § 16.1-228.  Both the prior and current versions, however, include the requirements that the child need treatment, rehabilitation, or services not presently being received and that court intervention is essential to provide that treatment, rehabilitation, or services.  See Grigg, 224 Va. at 367; Code § 16.1-228.

provide" those services. Code § 16.1-228. The Commonwealth failed to present sufficient evidence to establish either of these two requirements.

As to the first requirement, neither the trial court nor the Commonwealth pointed to any particular "treatment, rehabilitation or services not presently being received" that K.S. needed on the afternoon of December 21, 2018. Unlike in Grigg, where a specific need for educational services was identified, here the Commonwealth argued no specific treatment, rehabilitation, or service needed to be put in place. The Commonwealth suggests that a 911 call could be considered "services" under the statute. But any assistance provided during a 911 call is emergency police assistance; it is not "treatment, rehabilitation or services" as contemplated by Code § 16.1-228. Furthermore, even if the assistance provided during a 911 call could be considered "services," K.S. clearly had access to those "services" while she was in the car with Spell because she called 911 and spoke with dispatch. Therefore, the 911 call cannot be considered "treatment, rehabilitation or services *not presently being received*." See Code § 16.1-228 (emphasis added).

Nor did the Commonwealth's evidence prove that Spell posed a continuing threat to K.S.'s safety, rendering K.S. or the family in need of "treatment, rehabilitation or services" to protect K.S. from future harm. While the Commonwealth did introduce Spell's prior conviction for driving while intoxicated, Spell's blood test results revealed no alcohol and only a minimal dosage of the prescription drug Lorazepam. Without evidence demonstrating that Spell operated the vehicle in violation of the instructions accompanying the prescription medication, or evidence indicating that Spell planned to drive the children again while in the same condition, we cannot say that the danger posed to K.S. was ongoing. Accordingly, we cannot say that K.S. or her family needed "treatment, rehabilitation or services not presently being received."

- 7 -

Concerning the second requirement, the Commonwealth's evidence also failed to prove that "the intervention of the court [was] essential" to provide any services needed by K.S. In Grigg, the parents were given an opportunity to remedy the deficiency that had been identified. In contrast, here, even if the car ride was a danger to K.S.'s health or life, the Commonwealth did not show that Spell refused to remedy the concern—by the time K.S. decided to call 911, Spell was already driving home. Moreover, in contrast to Grigg, here there was no evidence that K.S. would have remained in an unsafe condition without court intervention. The condition that the Commonwealth alleged posed a "serious threat" to K.S.'s safety on December 21, 2018, was Spell's erratic driving, apparently as a result of prescription medication she had taken. The evidence at trial established that K.S. was frightened by her mother's driving and called 911 to report it. But the evidence also established that Spell drove the car home, parked, and went inside with both children. By the time Deputy Gale arrived to investigate, Spell and the children were already inside the house.[3] Here there was no evidence Spell's conduct "would have continued indefinitely had the court not intervened." See Grigg, 224 Va. at 367. No "intervention by a court" was needed or requested, much less deemed "essential." See Code

---

[3] We note also that the statute plainly indicates that court intervention—not police intervention—is an essential part of the definition of "child in need of services." "The one canon of construction that precedes all others is that '[w]e presume that the legislature says what it means and means what it says.'" Tvardek v. Powhatan Vill. Homeowners Ass'n, Inc., 291 Va. 269, 277 (2016) (quoting In re: Woodley, 290 Va. 482, 491 (2015)).

The statute requires a party to prove that the child in question needs treatment, rehabilitation, or services not presently being received. Code § 16.1-228. The next sub-section adds only one provision: that court intervention is essential to provide those services. Code § 16.1-228. We presume that the General Assembly "[said] what it mean[t] and mean[t] what it [said]" in requiring a party to prove that *court* intervention is essential to provide the needed services to the child. See Tvardek, 291 Va. at 277.

§ 16.2-228; see also DeAmicis v. Commonwealth, 29 Va. App. 751, 758 (1999), aff'd on other grounds, 31 Va. App. 437 (2000) (*en banc*).[4]

We conclude that the Commonwealth's evidence failed to prove that K.S. needed "treatment, rehabilitation or services not presently being received" and failed to prove that court intervention was "essential" to resolve the threat of Spell's erratic driving on the afternoon of December 21, 2018. Accordingly, the evidence was insufficient to establish that K.S. was a "child in need of services" as contemplated by Code § 18.2-371.[5]

### III. CONCLUSION

Because the Commonwealth's evidence was insufficient to prove that K.S. was a "child in need of services" as contemplated by Code § 18.2-371, we conclude that the jury's verdict convicting Spell of contributing to the delinquency of a minor was "plainly wrong [and] without evidence to support it." Wagoner, 289 Va. at 484. Accordingly, we reverse the conviction and dismiss the indictment.

Reversed and dismissed.

---

[4] The trial court recognized this fact when it said that "services" were "ultimately not as necessary as they could have been."

[5] At trial and on appeal, the Commonwealth relied upon our unpublished opinion in Watkins v. Commonwealth, No. 0975-96-3 (Va. Ct. App. May 6, 1997), in support of its argument that the evidence here was sufficient. "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value. Rule 5A:1(f)." Otey v. Commonwealth, 61 Va. App. 346, 350 n.3 (2012). However, because Watkins, a criminal case, specifically employed a clear and convincing standard rather than a reasonable doubt standard in evaluating the sufficiency of the evidence, we conclude that it has no persuasive value and decline to consider it in our analysis.