COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present: Chief Judge Decker, Judges AtLee and Malveaux
Argued at Richmond, Virginia


JILL RUDERMAN

                                                            OPINION BY
v.        Record No. 0024-22-2            CHIEF JUDGE MARLA GRAFF DECKER
                                                          DECEMBER 20, 2022
KATHY PRITCHARD


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
William E. Glover, Judge

(Matthew B. Kaplan; The Kaplan Law Firm, on briefs), for
appellant. Appellant submitting on briefs.

Tamara L. Tucker (Tucker Law Firm, PLC, on brief), for appellee.


Jill Ruderman appeals a circuit court judgment that awarded money damages and a return

of personal property to Kathy Pritchard in her de novo appeal of a detinue claim from the general

district court.[1] Ruderman contends that the circuit court lacked subject matter jurisdiction to

permit Pritchard to file an amended complaint increasing her ad damnum beyond the

jurisdictional limit of the district court. Consequently, she argues that the circuit court erred by

denying her motion to dismiss. We hold that the circuit court lacked subject matter jurisdiction

to permit the filing of the amended complaint and to enter judgment on it. As a result, we vacate

the circuit court's judgment, dismiss the amended complaint, and remand the case for further

proceedings in accordance with this opinion.

_____

[1] After briefing concluded and oral argument was scheduled, Ruderman's counsel
notified this Court that Ruderman had died. As permitted by Code § 8.01-20, the Court exercises
its discretion to "retain jurisdiction and enter judgment or decree in the case as if" the death had
not occurred. *See, e.g.*, *Kambis v. Considine*, 290 Va. 460, 462 n.1 (2015); *Utsch v. Utsch*, 266
Va. 124, 126 n.1 (2003).

BACKGROUND[2]

Pritchard is a breeder of Cornish Rex cats. Ruderman was a veterinarian. The two women engaged in a series of transactions that involved breeding various cats. A dispute arose between them over several of the cats and their offspring.

In 2018, Pritchard, proceeding *pro se*, filed a warrant in detinue against Ruderman in general district court. The warrant listed eleven cats that she alleged Ruderman had "unjustly withheld" from her, including one named Lady Godiva, and she provided a dollar amount representing each cat's "alternate value." The district court entered a judgment awarding money damages to Pritchard for some of the cats and ordering the return of other cats. The award was for $24,100.

Pritchard appealed the district court's decision to the circuit court.[3] In October 2019, while the de novo appeal of the matter was pending in that court, Pritchard filed a motion for leave to amend the complaint. The amended complaint restated the original detinue claim as its first count and added additional kittens to its scope.[4] It also included new counts for breach of contract, conversion, declaratory judgment, and permanent injunctive relief. The complaint

---

[2] We recite what occurred in the circuit court as indicated by the pleadings and other undisputed contents of the record. *See generally Watson v. Commonwealth*, 297 Va. 347, 349-50, 352 (2019) (characterizing whether the pleadings properly allege the existence of subject matter jurisdiction as "a question of law" that "requires no factual development or evidentiary record to consider"); *Jones v. Commonwealth*, 42 Va. App. 142, 147-48 (2004) (en banc) (evaluating "certain facts *underlying* [the] question of law" that is subject matter jurisdiction to determine whether "the required jurisdictional facts were proved").

[3] Pritchard represents that although she substantially prevailed in the general district court, she appealed because that court erroneously allowed Ruderman to decide whether she would keep Lady Godiva or pay for her and failed to determine that Lady Godiva's offspring belonged to Pritchard.

[4] The amended complaint did not mention the proceeding in the general district court or attempt to incorporate the allegations made in the warrant in detinue filed in that court, on which the appeal was based.

sought the return of numerous cats; the transfer of all Cat Fancier's Association registrations for those cats to Pritchard; damages of $20,000; punitive damages of $20,000; and attorney fees and costs "not to exceed $30,000." None of the counts contained its own ad damnum or request for damages. Instead, a single prayer for relief at the end of the amended complaint listed the combined damages requested.

In Pritchard's accompanying motion for leave to file the amended complaint, she acknowledged that the case was an appeal from the judgment of the district court on a warrant in detinue. She represented that she learned for the first time while the appeal was pending in circuit court that two of the cats at issue had litters of kittens. Pritchard further noted that Ruderman did not object to her adding some of those kittens to the detinue claim. She indicated, however, that Ruderman objected to the remainder of the new claims set out in the amended complaint. Pritchard further noted that Supreme Court Rule 1:8 states that leave to amend should be granted liberally. She suggested that permitting her to file the amended complaint would serve "the interest of judicial economy" and "prevent the possibility of multiple inconsistent rulings" that might arise if she "were to file a separate action for the additional claims."

After a hearing, the circuit court entered an order granting the motion "on the grounds set forth" by Pritchard "and for good cause shown." Following the court's acceptance and filing of the amended complaint, the case proceeded under the same single case number as prior to the filing.

Ruderman subsequently made a motion to dismiss the amended complaint due to an absence of subject matter jurisdiction. She asserted that Pritchard removed the matter from the circuit court's jurisdiction when she filed the amended complaint in that court with the "ad

- 3 -

damnum clause of $40,000.00, not including costs and attorney's fees," an amount higher than the district court's jurisdictional limit of $25,000.

Following a hearing, the circuit court denied Ruderman's motion to dismiss. In the order embodying that ruling, it asserted that Pritchard "did not increase the ad damnum of the original[] appealed claim beyond the jurisdictional limit" of the district court. (Emphasis omitted). The circuit court reasoned under those circumstances that the Rules of the Supreme Court permitted it to authorize Pritchard to add new claims not heard in the general district court "so that pursuant to Rule 1:6, all of [Pritchard's] claims against [Ruderman] could be litigated once," without the need for Pritchard to file a separate action.

At trial in the circuit court, the jury returned a verdict in Pritchard's favor. It found that she was the rightful owner of Lady Godiva and her offspring and was entitled to take possession of them, and it additionally awarded her $9,134.67 for their wrongful detention. The circuit court entered a final order consistent with the jury's verdict.

ANALYSIS

Ruderman contends that the circuit court's subject matter jurisdiction was limited to that of the general district court. As a result, she suggests that when Pritchard amended her complaint to seek an amount greater than the district court's jurisdictional limit, the circuit court lost jurisdiction.

Whether the record establishes subject matter jurisdiction in a particular case is a question of law reviewed de novo on appeal. *Parrish v. Fed. Nat'l Mortg. Assoc.*, 292 Va. 44, 49 (2016). The appellate court is "not limited to the arguments raised by the parties." *Id.* To the extent the Court's analysis involves statutory interpretation, questions of statutory construction are also reviewed under a de novo standard. *Collelo v. Geographic Servs., Inc.*, 283 Va. 56, 66 (2012). We consider the issue within these well-established parameters.

Subject matter jurisdiction "is the authority granted through constitution or statute to adjudicate a class of cases or controversies." *Gray v. Binder*, 294 Va. 268, 275 (2017) (quoting *Morrison v. Bestler*, 239 Va. 166, 169 (1990)). Whether a court has subject matter jurisdiction is a "'threshold'" issue, and the parties "can neither waive nor confer" such jurisdiction on a court. *Knight v. Ottrix*, 69 Va. App. 519, 523-24 (2018) (quoting *Parrish*, 292 Va. at 49). Subject matter jurisdiction "must affirmatively appear on the face of the record[;] that is[,] the record must show . . . that the case is one of a class of which the court rendering the judgment was given cognizance." *Owusu v. Commonwealth*, 11 Va. App. 671, 673 (1991) (quoting *Shelton v. Sydnor*, 126 Va. 625, 630 (1920)), *quoted with approval in Jones v. Commonwealth*, 42 Va. App. 142, 146 (2004) (en banc). Due to its fundamental nature, a claim of the absence of such jurisdiction "can be raised at any time in the proceedings," even by the Court for the first time on appeal. *Morrison*, 239 Va. at 170. If it is determined that the lower court did not have subject matter jurisdiction, "the only function remaining . . . is that of announcing the fact and dismissing the cause." *Pure Presbyterian Church of Wash. v. Grace of God Presbyterian Church*, 296 Va. 42, 50 (2018) (quoting *Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

This case originated in the general district court. General district courts are "courts of limited jurisdiction and may exercise only such subject matter jurisdiction as has been expressly conferred by statute." *Parrish*, 292 Va. at 49. Code § 16.1-106 provides the right to appeal a determination of a general district court in a civil case to the circuit court. Code § 16.1-106; *see* Code § 16.1-69.5 (defining "[c]ourts not of record"); Code § 17.1-500 (defining a "court of record of a city"). When a circuit court is "exercising its appellate jurisdiction in a de novo appeal," its "subject matter jurisdiction is derivative of the court not of record from which that appeal is taken." *Parrish*, 292 Va. at 49 (citing *Addison v. Salyer*, 185 Va. 644, 651-52 (1946)). Under these circumstances, therefore, "the circuit court has no more subject matter jurisdiction

than the general district court had in that court's original proceeding." *Id.* This also means that "the jurisdictional limits" of the general district court, including the dollar limits, "carry over to the appeal" of a judgment of that court to the circuit court. *Afify v. Simmons*, 254 Va. 315, 317-18 (1997) (citing *Stacy v. Mullins*, 185 Va. 837, 844 (1946)).

The applicable jurisdictional dollar limit of the general district court for the types of claims at issue in this case is $25,000, "exclusive of interest and any attorney fees." *See* Code § 16.1-77(1); *see also* 2011 Va. Acts chs. 14, 702 (raising the upper jurisdictional limit from $15,000 to $25,000).[5] Consequently, in the appeal of Pritchard, the plaintiff, to the circuit court, that court's subject matter jurisdiction permitted it to entertain an ad damnum of no more than $25,000 absent a statutory or common law exception to these principles.

Code § 16.1-114.1 provides generally that the circuit court, in an action appealed from a district court, has the authority to permit some amendments to the pleadings. Code § 16.1-114.1 (providing in part that the statute "shall be liberally construed, to the end that justice is not delayed or denied by reason of errors in the pleadings or in the form of the proceedings"). That statute further expressly authorizes the circuit court to permit an increase in the amount of the claim above the jurisdictional dollar amount of $25,000 set forth in Code § 16.1-77 in "an appeal . . . taken *by a defendant*." *Id.* (emphasis added). By omitting plaintiffs from this provision, the General Assembly signaled its intent that the circuit court's authority to permit an amendment of the pleadings to increase the ad damnum in a de novo appeal does *not* include an appeal taken by a plaintiff such as Pritchard. *See Gov't Emps. Ins. Co. v. Hall*, 260 Va. 349, 355 (2000) (noting the fundamental principle of statutory construction that "mention of a specific

---

[5] Effective July 1, 2021, the General Assembly increased the jurisdictional limit for general district court actions for "injury to person" or "wrongful death" to $50,000. 2021 Va. Acts Spec. Sess. I ch. 199. However, the limit for claims "to specific personal property," "any debt," or "damages for breach of contract" or "injury done to [real or personal] property" remains at $25,000. *Id.*

item in a statute implies that omitted items were not intended to be included within the scope of the statute" (quoting *Turner v. Sheldon D. Wexler, D.P.M., P.C.*, 244 Va. 124, 127 (1992))); *see also Commonwealth ex rel. Dep't of Corrs. v. Brown*, 259 Va. 697, 705 (2000) (explaining that "[w]hen a legislative enactment limits the manner in which something may be done, the enactment also evinces the intent that it shall not be done another way" (quoting *Grigg v. Commonwealth*, 224 Va. 356, 364 (1982))).

The holding of the Supreme Court of Virginia in *Afify*, which also involved detinue claims, supports the conclusion that a plaintiff appealing to the circuit court may not increase her ad damnum beyond the statutory limit of the district court. *Afify* is not directly controlling because it did not concern an appeal to the circuit court. 254 Va. at 317. Instead, it involved district court claims that were "removed" by the defendant to the circuit court before trial could occur in the district court. *Id.* At that time, the statutory scheme authorized removal where a defendant wished to file a counterclaim that exceeded the general district court's jurisdictional limit. *Id.* at 316, 318-19 (citing Code § 16.1-92 (1988)).

In deciding *Afify*, the Supreme Court considered whether the removal statute permitted the plaintiffs in that case to increase the amount of their claims beyond the civil jurisdictional limits of the district court. *Id.* at 317-18. The Court noted that the statute permitted defendants to amend but did not mention plaintiffs and expressly limited the general authorization to amend to "correct[ing] any defects, irregularities and omissions in the pleadings." *Id.* at 318-19 (quoting Code § 16.1-92 (1988)). It further pointed out that the General Assembly subsequently changed the statute to expressly "'permit . . . amendments to increase the amount of the claim above the jurisdictional' limits of the general district court," which would have authorized the increase at issue, but that this amendment did not apply to the plaintiffs because the removal of the claims occurred prior to the statutory amendment. *Id.* at 319 n.3.

Under the circumstances in *Afify*, the Court held that only a defendant, not a plaintiff, could increase his ad damnum beyond district court jurisdictional limits following removal of the proceeding to the circuit court. *Id.* at 319. Similarly in the instant case, the applicable statute, Code § 16.1-114.1, expressly permits an increase in the ad damnum only following an appeal by the defendant, thereby implicitly preventing such an increase following an appeal by the plaintiff.

Language in Code § 16.1-77 further supports this conclusion. That statute provides that a plaintiff may increase the amount of his or her ad damnum beyond the general district court's jurisdiction "[w]hile a matter is pending in a general district court," prior to trial in that court. *See* 2019 Va. Acts ch. 787 (adding this provision). But if the plaintiff makes such a request prior to trial, trial cannot be held in the district court. Code § 16.1-77(1). Instead, the statute dictates that the district court "shall" transfer the matter to the circuit court for trial. *Id.* (stating that "no such order of transfer shall issue unless the motion to amend and transfer is made at least 10 days before trial," "[e]xcept for good cause shown"). By providing a mechanism for a plaintiff to increase her ad damnum *prior* to trial in the district court, resulting in transfer to the circuit court, the General Assembly expressed an intent that such an increase would not be allowed *after* trial. *See Hall*, 260 Va. at 355; *Brown*, 259 Va. at 705.

Consequently, the statutory scheme permits a plaintiff to increase the amount of the ad damnum above the jurisdictional limit but only if she does so prior to trial in the district court, and such a request necessitates a transfer of the claim to the circuit court for trial. *See* Code § 16.1-77(1). The existing statutory framework makes clear that *after* trial in the district court, on de novo appeal to the circuit court, an increase in the amount of the claim beyond the $25,000 jurisdictional limit is permitted only if *the defendant* appeals. *See* Code § 16.1-114.1.

- 8 -

Rules 1:8 and 3:2 also do not authorize a circuit court to allow an amendment that increases an ad damnum beyond jurisdictional limits. It is true that Rule 3:2(c)(ii), which requires the inclusion of "an ad damnum clause" in "[e]very complaint requesting an award of money damages," provides that "[l]eave to amend the ad damnum clause is available under Rule 1:8." Rule 1:8, in turn, states generally that leave to amend "should be liberally granted in furtherance of the ends of justice."

Despite the broad language in Rule 1:8, leave to amend an ad damnum clause is limited by jurisdictional principles. *See Commonwealth v. Smith*, 263 Va. 13, 18 (2002) (recognizing that in the event of a conflict between a statute and a rule of court, the statute prevails (first citing Va. Const. art. VI, § 5; and then citing Code § 8.01-3)). In *Afify*, the Supreme Court held that the statute at issue (which permitted the circuit court, following removal, to allow amendments "to correct any defects, irregularities and omissions in the pleadings") "express[ly] limit[ed] . . . the power of the circuit court to be liberal in granting leave to amend" pursuant to Rule 1:8. 254 Va. at 319 (citing Code § 16.1-92 (1988)). The Court held, as a result, that the circuit court erred by permitting the plaintiffs "to amend their original claims to increase the damages sought" in the circuit court "to amounts in excess of the jurisdictional limits of the general district court." *Id.*; *see also Stacy*, 185 Va. at 840, 843 (implying approval for the court hearing a matter in a de novo appeal "to permit amendments to be made . . . freely" as long as "the amendments d[id] not increase the amount claimed . . . beyond the jurisdiction of the inferior court" or otherwise exceed that court's jurisdiction (first quoting *Walker Ice Co. v. Blanchard*, 27 A. 330, 330 (R.I. 1893); and then citing *Copperthite Pie Corp. v. Whitehurst*, 157 Va. 480, 487 (1932))); *cf. Air Power, Inc. v. United States*, 741 F.2d 53, 58 (4th Cir. 1984) (interpreting Virginia law as precluding a losing party in a de novo appeal from "expanding either his claim or request for

remedies beyond those presented to the general district court" (first citing *Stacy*, 185 Va. 837; and then citing *Addison*, 185 Va. 644)).

Here, the circuit court acquired jurisdiction over plaintiff Pritchard's claim when she filed her de novo appeal of the district court judgment on the warrant in detinue. At that time, the circuit court assigned a particular docket number to that claim. Following discovery, the court permitted Pritchard to file the amended complaint under the same docket number. That amended complaint did three things: it included her appealed detinue claim, expanded that claim to include additional cats, and added new claims based on breach of contract and conversion.

We assume without deciding that the circuit court had the authority to permit plaintiff Pritchard to amend her complaint to add new claims to her de novo appeal. *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) (assuming without deciding that an issue was properly before the Court because addressing it on the merits provided the best and narrowest ground for resolution). Nonetheless, those new claims depended on the legitimacy of the de novo appeal for their existence. This is so because the new claims proceeded as a single amended complaint under the original docket number assigned to that appeal. In other words, the amended complaint wholly supplanted the original warrant in detinue in the circuit court. *Cf. Afify*, 254 Va. at 317, 319 (involving a similar amended pleading filed by plaintiffs in the circuit court that supplanted several detinue warrants removed to that court by the defendant prior to trial). Further, the amended complaint contained only a single prayer for relief for all five counts. *See generally Town & Country Props., Inc. v. Riggins*, 249 Va. 387, 399-400 (1995) (recognizing that separate counts in a complaint can have separate ad damnums). Crucially, the ad damnum in that single prayer for relief was for a total of $40,000 in compensatory and punitive damages. The wording of the amended complaint, therefore, permitted Pritchard to receive an award of

$40,000 in damages based solely on the detinue claim appealed from the general district court, an amount that exceeded the $25,000 jurisdictional limit of that court.

Accordingly, the amended complaint requested relief outside the circuit court's subject matter jurisdiction.[6]  *Cf. Afify*, 254 Va. at 319 (holding that when a defendant removed detinue claims to the circuit court prior to a trial, the statute did not permit the plaintiff to increase the damages beyond the jurisdictional limits of the district court).  Based on that lack of subject matter jurisdiction, the circuit court erred by allowing Pritchard to file her amended complaint and denying Ruderman's motion to dismiss it.  *See id.* (holding that the circuit court's lack of jurisdiction to consider the amended pleading rendered "the trial and verdict on that pleading . . . nullities").

For these reasons, we vacate the judgment of the circuit court, dismiss the amended complaint, and remand the case for further proceedings in the circuit court.  *See id.*; *see also Robert & Bertha Robinson Family, LLC v. Allen*, 295 Va. 130, 150 (2018) (recognizing that the "'event' that triggers the 'annulment of the district court judgment' is the trial de novo, not the notice of appeal" (citation omitted) (quoting *Commonwealth v. Diaz*, 266 Va. 260, 266 (2003)));  *cf. also Davis v. County of Fairfax*, 282 Va. 23, 30 (2011) (holding that where a party appealed a district court ruling to the circuit court and took a nonsuit, the appropriate place to reinstate the proceeding was the circuit court).

---

[6] The circuit court, when it denied the motion to dismiss the amended complaint due to a lack of subject matter jurisdiction, stated that Pritchard "did not increase the ad damnum of the original, appealed claim beyond the jurisdictional limit" of the district court.  (Emphasis omitted).  As noted, however, the single ad damnum clause in the amended complaint is for $40,000.  Although the circuit court may have planned to ensure that the plaintiff would not be allowed to *recover* more than the jurisdictional limit on the original claim, the amended complaint wholly supplanted the warrant in detinue and did not contain such limits.

CONCLUSION

The circuit court acquired jurisdiction over the detinue claim as a de novo appeal. Its jurisdiction over that claim, therefore, was derivative of the general district court's subject matter jurisdiction and governed by the applicable $25,000 jurisdictional limit of that court. Further, assuming the circuit court had discretion to permit amendments to the complaint to add other theories of relief, the amended complaint, which contained only a single ad damnum clause for all counts, permitted plaintiff Pritchard to recover $40,000 in damages on the detinue claim, an amount substantially in excess of the district court limit. Consequently, the circuit court lacked subject matter jurisdiction to permit the filing of the specific amended complaint and to enter judgment on it. Therefore, we vacate the judgment of the circuit court, dismiss the amended complaint, and remand the case for further proceedings in the circuit court.

*Vacated and remanded.*